# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

TRACY L. HARRISON,

               Plaintiff,

     v.

ANDREW M. SAUL,

               Defendant.

CIVIL ACTION NO. 3:20-CV-00311

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Tracy L. Harrison brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9; Doc. 10). For the reasons set forth below, the Court directs that the Commissioner's decision be **AFFIRMED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

In August 2016, Harrison protectively filed an application under Title II for disability insurance benefits, claiming disability beginning August 17, 2015, due to limited scleroderma (HHC), sacroiliitis (HCC), chronic pancreatitis (HCC), lumbar disc disorder, and lymphocytic colitis. (Doc. 8-6, at 5). The Social Security Administration initially denied the application on October 11, 2016, prompting Harrison's request for a hearing, which Administrative Law Judge (ALJ) Mike Oleyar held on July 30, 2018. (Doc. 8-2, at 75). In a

written decision dated October 30, 2018, the ALJ determined that Harrison is not disabled and therefore not entitled to benefits under Title II. (Doc. 8-2, at 34). The Appeals Council subsequently denied Harrison's request for review. (Doc. 8-2, at 2).

On February 21, 2020, Harrison filed the instant action. (Doc. 1). The Commissioner responded on May 29, 2020, providing the requisite transcripts from Harrison's disability proceedings. (Doc.7; Doc. 8). The parties then filed their respective briefs, with Harrison alleging four bases for reversal or remand (Doc. 11; Doc. 12; Doc. 13).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration,

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B. Judicial Review

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Harrison is disabled, but whether the Commissioner's determination that Harrison is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III.   THE ALJ'S DECISION

In his written decision, the ALJ determined that Harrison was not under a disability, as defined in the Social Security Act, from August 17, 2015—the alleged onset date, through the date of this decision. (Doc. 8-2, at 45). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4) and 416.920(a).

### A.   STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work

4

activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)-(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Harrison "has not engaged in substantial gainful activity since August 17, 2015 – [the alleged onset date,]" and therefore proceeded to step two of the analysis. (Doc. 8-2, at 36).

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ considers step three. Here, the ALJ found that Harrison has 14 medically determinable impairments—scleroderma and calcinosis, Raynaud's phenomenon, esophageal dysfunction, sclerodactyly telangiectasia (CREST), chronic pancreatitis, Barrett's esophagus, gastroesophageal reflux disease (GERD), lymphocytic colitis, degenerative disc disease of the thoracic and lumbar spine, sacroiliitis, degenerative joint disease of the bilateral sacroiliac joints, tendinopathy of the gluteus minimus and medius, sero-negative spondyloarthropathy and enteropathic arthritis, and a bilateral hallux deformity. (Doc. 8-2, at 37).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version

of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." Here, the ALJ determined that neither of Harrison's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 8-2, at 37). The ALJ specifically considered Listing 14.04 (Systemic sclerosis (scleroderma)) and determined that Harrison did not meet Listing 14.04 for several reasons. (Doc. 8-2, at 38). First, the ALJ concluded that Harrison's medical condition did not involve two or more organs and body systems, with one of the organs and body systems involved causing at least a moderate level of severity. (Doc. 8-2, at 38). The ALJ further concluded that Harrison's impairment did not have at least two of the constitutional symptoms or signs, including severe fatigue, fever, malaise, or involuntary weight loss, and that Harrison's fatigue, malaise, and weight loss had all been mild, as evidenced by her denials of the symptoms. (*See* Doc. 8-7, at 11, 26, 31, 34, 40, 47; Doc. 8-9, at 8, 20, 24, 40; Doc. 8-9, at 112; Doc. 8-10, at 9); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04.

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Here, Harrison alleged that her medical impairments affected her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, and use her hands. (Doc. 8-6, at 26). The ALJ found that while Harrison's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Harrison's statements

concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 8-2, at 40). The ALJ then went on to detail the record evidence.

After weighing and considering the evidence, the ALJ determined that Harrison had the, "[RFC] to perform light work as defined in 20 C.F.R. 404.1567(b)," with additional limitations:

> [Harrison] can frequently reach[], handle, finger, and feel with bilateral upper extremities. [Harrison] can frequently us[e] foot controls with the bilateral lower extremities. [Harrison] can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs, but [Harrison] can never crawl or climb ladders, ropes, or scaffolds. [Harrison] can occasionally operate a motor vehicle. [Harrison] can never be exposed to atmospheric conditions, extreme cold, heat, wetness, humidity, weather, vibration, and hazards such as unprotected heights and dangerous moving mechanical parts.

(Doc. 8-2, at 39).

## E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). "If the claimant can perform his past relevant work despite his limitations, [s]he is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, based on testimony adduced from a vocational expert at Harrison's administrative hearing, the ALJ determined that Harrison was unable to perform her past relevant work. (Doc. 8-2, at 43). Thus, the ALJ proceeded to step five of the sequential analysis.

F. STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, considering Harrison's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Harrison could have performed. (Doc. 8-2, at 44). In making that determination, the ALJ relied on the vocational expert's testimony that Harrison was able to perform the requirements of occupations such as mail sorter, general cashier II, and pricer with open positions ranging from 20,000 to 100,000 nationally. (Doc. 8-2, at 44). Accordingly, the ALJ determined that Harrison was not disabled and denied her application for benefits. (Doc. 8-2, at 44).

IV. DISCUSSION

Harrison advances three arguments on appeal, arguing that the ALJ erred by (1) failing to assign significant weight to the opinions of Dr. Lisa Mucciolo, treating physician; (2) failing to assign significant weight to the opinions of Julie Pashley-Hamilton, a certified physician assistant (PA-C); and (3) failing to present a hypothetical question containing all of Plaintiff's credibly established limitations to the vocational expert. (Doc. 11, at 4-5).[2] In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 12). For the following reasons, the Court

---

[2] Harrison advances a fourth argument on appeal: the ALJ rejected the testimony and statements of Plaintiff and her witness for erroneous reasons. (Doc. 11, at 5). However, Harrison fails to mention or analyze this fourth contention in her brief in support. Thus, the Court will not address this argument in this opinion. (Doc. 11).

finds that the ALJ properly applied the law and that substantial evidence supports the RFC assessment.

### A. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S CONSIDERATION OF THE OPINION EVIDENCE OF RECORD

Harrison's arguments on appeal largely concern the ALJ's weighing of the opinion evidence of record. Specifically, Harrison argues that the ALJ erroneously assigned "little" weight to the opinion of treating physician – Dr. Mucciolo, and "partial" weight to the opinion of Julie Pashley-Hamilton, PA-C. (Doc. 11, at 5-18). The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d at 361. "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n. 1 (3d Cir. 1999)). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018)

When determining a claimant's RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (internal citations omitted); *see* 20 C.F.R. § 416.927(c); *see also* SSR 96-8P, 1996 WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' . . . ."). "A cardinal principal guiding disability eligibility determination is that the ALJ accord treating physicians reports great weight, especially when their opinion reflect expert judgement based, on a

continuing observation of the patient's condition over a prolonged period of time." *Morales,*
*225 F.3d at 317.* However, a "treating source's opinion is not entitled to controlling weight if
it is 'inconsistent with the other substantial evidence in [the] case record. *Scouten v. Comm'r*
*Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (alteration in original (quoting 20 C.F.R. §
404.1527(c)(2)). Further, an ALJ may give an opinion less weight or no weight if it does not
present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with
the record as a whole. 20 C.F.R. § 404.1527(c). If a conflict exists in the evidence, "the ALJ
may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066); *see also*
*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

It is the duty of the ALJ to explain the rationale for the weight afforded to each medical
opinion, as this allows for meaningful judicial review. *Plummer*, 186 F.3d at 429 ("The ALJ
must consider all the evidence and give some reason for discounting the evidence that [the
ALJ] rejects." (quoting *Mason*, 994 F.2d at 1066)). The ALJ, however, should refrain from
rejecting all medical opinions in favor of his or her own lay interpretation of the medical
evidence. *Slotcavage v. Berryhill*, Civ. No. 18-1214, 2019 WL 2521634 at *1 (M.D. Pa. Jun. 3,
2019).

Applying the above standard to the present record, the Court finds substantial evidence
to support the ALJ's consideration of the opinion evidence of record.

### 1. Dr. Lisa Mucciolo's Opinion

Harrison argues that the ALJ erred in not assigning significant weight to the opinion
of her treating physician, Dr. Mucciolo pursuant to 20 C.F.R. § 404.1527(c)(2)(1). (Doc. 11,
at 8-17). Specifically, Harrison asserts that the ALJ should have afforded greater weight to
Dr. Mucciolo's opinion, which states that her medical conditions meet listing 14.04 (Systemic

sclerosis (Scleroderma)). (Doc. 11, at 7-12). Listing 14.04A requires the involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04A. Section 14.04D requires repeated manifestations of systemic sclerosis (scleroderma), with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: limitation of activities of daily living; limitation in maintaining social functioning; and limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04D.[3]

Harrison contends that the ALJ concluded that her medical impairments did not meet listing 14.04 without even mentioning the opinions from Dr. Mucciolo, let alone indicating why they were not credited. (Doc. 11, at 8). Additionally, Harrison asserts that the ALJ erroneously made a conclusory finding that her medical conditions did not meet listing 14.04 (Systemic sclerosis (Scleroderma)). (Doc. 11, at 9). Harrison argues:

> First, the ALJ's finding that Plaintiff did not have at least two of the constitutional symptoms or signs because they were "mild" is based on a clear error of law, as § 14.04 requires only that these symptoms or signs be present, not that they be of any particular degree of severity. 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04A(2) and D. Thus, the ALJ's concession that these symptoms and signs were present (albeit "mild" in his view) demonstrates that this portion of the listing requirements was met. Second, the ALJ cited to no evidence whatsoever that Harrison does not have involvement of two or more of the organ/body systems, with one to at least at a moderate degree of severity, as found by the treating specialist. The ALJ improperly substituted his lay judgement of the medical findings for the treating rheumatologist's expert

---

[3] While Harrison does not advance a listing argument, she argues that Dr. Mucciolo – her treating physician opined that she meets listing 14.04A and D. Therefore, the Court will address this issue in this decision.

opinion; this was particularly egregious given that there is no medical opinion reaching a finding contrary to Dr. Mucciolo and the ALJ did not cite to any evidence that Harrison does not satisfy this requirement of § 14.04A. [The] ALJ's own findings that Harrison has severe impairments associated with scleroderma, including Raynaud's phenomenon, chronic pancreatitis, Barrett's esophagus, lymphocytic colitis, and interstitial lung disease (R. 36) is conclusive evidence that Harrison has involvement of even more than the two organs/body systems required by the listing to a moderate degree.

(Doc. 11, at 9-10).

Harrison further contends:

Third, the ALJ also erred by concluding that Harrison never exhibited at least two of the following signs or symptoms: severe fatigue, malaise, and involuntary weight loss, as required by §§ 14.04A and 14.04D. The medical records confirm evidence of both fatigue (Ex. 1F, pp. 10, 65, and 84, and Ex. 3F, p. 39) and malaise (Ex. 1F, pp. 4, 6, 8, 25, 33, 45, 59, 65, 70, and 84; Ex. 3F, pp. 7, 14, and 39; and, Ex. 6F, p. 4). These findings satisfy the requirements of the listings, but the ALJ simply failed to recognize this evidence. Fourth, the ALJ's finding that Harrison does not meet the second prong of § 14.04D because she does not have any significant mental status abnormalities is flawed. Dr. Mucciolo explained that Harrison's marked limitations in these areas are due to her being "physically slow," not because of mental impairments (R. 624). The ALJ's exclusive focus on the lack of mental status abnormalities in connection with this part of the Listing is contrary to the introduction to the Listing itself, which states that these limitations "may result from the impact of the disease process itself on your mental functioning, physical functioning, or both your mental and physical functioning. This would result from persistent or intermittent symptoms, such as depression, severe fatigue, or pain, resulting in a limitation of your ability to do a task, to concentrate, to persevere at a task, or to perform the task at an acceptable rate of speed." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.00(I)(4). The ALJ clearly failed to apply this legal standard when he required that the marked limitations be the result of mental impairments, contrary to the regulation.

(Doc. 11, at 10-11).

Moreover, Harrison argues that the ALJ erroneously rejected Dr. Mucciolo's March 2017 and July 2018 medical opinion concerning the nature and severity of her impairments and their impact on her functioning and ability to work. (Doc. 11, at 11). Harrison contends that if the ALJ had properly credited Dr. Mucciolo's opinion, he would have rendered a finding of disabled. (Doc. 11, at 12).

In this case, the Court finds that despite Harrison's assertions, substantial evidence supports the ALJ's consideration of Dr. Mucciolo's opinion. Here, the ALJ considered Dr. Mucciolo's March 2017 and July 2018 opinion and accorded both opinions "little" weight. In March 2017, Dr. Mucciolo opined that Harrison could occasionally lift or carry up to ten pounds; she could occasionally sit, stand, stoop, or walk; she could never occasionally handle and finger; she could occasionally lift, reach, or carry; and she could never push, pull, climb, crawl, kneel, bend, or twist. (Doc. 8-10, at 41).

In July 2018, Dr. Mucciolo opined that Harrison's medical conditions met listing 14.04 (Systemic sclerosis (scleroderma)). (Doc. 8-10, at 31-32). Specifically, Dr. Mucciolo opined that Harrison had a marked limitation in her activities of daily living and social interactions. (Doc. 8-10, at 32). Additionally, Dr. Mucciolo opined that Harrison had the symptoms to meet 14.04D1 and D2, with severe fatigue, malaise, and involuntary weight loss. (Doc. 8-10, at 32). Moreover, Dr. Mucciolo opined that Harrison could only lift or carry less than ten pounds; she could stand for about two hours a day; she could sit for less than two hours a day, with breaks every five minutes to switch positions; and she could occasionally climb stairs. (Doc. 8-10, at 33-34). Dr. Mucciolo further opined that Harrison had limitations in handling and fingering; she should avoid moderate exposure to extreme heat, wetness, and humidity; she should avoid concentrated exposure to noise; and she would miss more than three days of work a month due to her medical impairments. (Doc. 8-10, at 34-35).

The ALJ, however, accorded "little" weight to both of Dr. Mucciolo's opinions. (Doc. 8-2, at 42-43). With regard to Dr. Mucciolo's March 2017 opinion, the ALJ reasoned that while he acknowledged Dr. Mucciolo's treating relationship with Harrison, such extreme limitations were inconsistent with the overall record, as multiple physical examinations

demonstrated unremarkable findings. (Doc. 8-2, at 43). For example, upon examination Harrison exhibited mild swelling, no synovitis, no clubbing, no cyanosis, no peripheral edema, or loss of sensation, and normal strength. (Doc. 8-2, at 43). The ALJ further reasoned that the medical record reflected that Harrison's treatment was conservative with no surgeries or admissions. (*See* Doc. 8-2, at 43; Doc. 8-7, at 27, 34, 41, 71; Doc. 8-8, at 90, 92, 94, 96, 100; Doc. 8-9, at 74, 76, 78, 83; Doc. 8-9, at 4, 96, 98, 102, 112; Doc. 8-10, at 2-29).

Similarly, the ALJ accorded "little" weight to Dr. Mucciolo's July 2018 opinion, explaining that Dr. Mucciolo's own examinations failed to support this level of functional deficits. (Doc. 8-2, at 43). For example, Dr. Mucciolo's examinations revealed that Harrison exhibited full strength, intact sensation, and good or slightly decreased range of motion in her lower extremities. (*See* Doc. 8-2, at 42; Doc. 8-7, at 5, 48, 52, 57, 63, 104, 107, 110; Doc. 8-8, at 94, 96; Doc. 8-9, at 74, 78, 83, 94, 98, 102; Doc. 8-10, at 11). Additionally, the ALJ reasoned that Dr. Mucciolo's opinion was contradicted by the opinion of Dr. Crescenzo Calise, State agency consultant, who opined that Harrison could perform work at the light exertional level, with additional limitations to address her functional limitations. (*See* Doc. 8-3, at 2-9). Thus, the ALJ accorded "little" weight to Dr. Mucciolo's opinions.

Here, the ALJ provided legally and factually sufficient reasons for the weight he afforded to the opinions of Dr. Mucciolo and based his conclusions on substantial evidence. It is the right and the responsibility of the ALJ to make such assessments, and the Court finds that substantial evidence supports this determination. Harrison's argument simply asks the Court to re-weigh the evidence, which this Court cannot do. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting *Williams*, 970 F.2d at 1182). Because the Court cannot re-weigh the evidence, the

Court finds that the ALJ has not erred in assigning "little" weight to the opinions of Dr. Mucciolo.

### 2.  Julie Pashley-Hamilton, PA-C

Similarly, the ALJ did not err in weighing the opinion of Julie Pashley-Hamilton, PA-C. As mentioned *supra*, an ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). It is the duty of the ALJ, however, to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer*, 186 F.3d at 429.

Contrary to Harrison's assertions, substantial evidence supports the ALJ's consideration of Julie Pashley-Hamilton, PA-C. Harrison argues that in December 2015, Julie Pashley-Hamilton, PA-C completed a "Capabilities and Limitations Worksheet" at the request of her long-term disability insurance carrier. (Doc. 11, at 17). In the form, Julie Pashley-Hamilton opined the following:

> Ms. Pashley-Hamilton opined that her patient could only occasionally lift, carry, push, pull, reach, and was capable of working for a total of only four hours per day. [R. 628.] In a second opinion dated May 27, 2016, Ms. Pashley-Hamilton opined that Plaintiff could only occasionally lift, carry, push, pull, reach, stand, walk, and sit. (R. 630).

(Doc. 11, at 17).

Harrison asserts that the ALJ failed to credit Julie Pashley-Hamilton's December 2015 opinion. (Doc. 11, at 17). Harrison avers that had the ALJ accepted Julie Pashley-Hamilton's opinion, Harrison would have been found disabled. (Doc. 11, at 17). While Harrison concedes that Julie Pashley-Hamilton is not considered an "acceptable medical source" under the regulations, Harrison argues that Julie Pashley-Hamilton would be considered an "other source" under the regulations. (Doc. 11, at 18). Thus, all of her findings should have been

considered. (Doc. 11, at 18).

Contrary to Harrison's contentions, the Court finds substantial evidence to support the ALJ's consideration of Julie Pashley-Hamilton's opinion. As mentioned *supra*, in December 2015, Julie Pashley-Hamilton, PA-C opined that Harrison could occasionally lift or carry up to 50 pounds and could frequently lift or carry up to 20 pounds. (Doc. 8-10, at 36). Julie Pashley-Hamilton further opined that Harrison could frequently handle, finger, or feel; she could occasionally sit, stand, stoop, or walk; and she should avoid hazardous machine and power tools. (Doc. 8-10, at 36). In May 2016, Julie Pashley-Hamilton opined that Harrison could occasionally lift or carry up to 20 pounds; frequently lift or carry up to ten pounds; she could never climb, crawl, or kneel; she could occasionally lift, pull, push, reach forward and overhead, carry, bend, or twist, (Doc. 8-10, at 38-39). The ALJ, however, accorded Julie Pashley-Hamilton's opinions "partial" weight. (Doc. 8-2, at 43). The ALJ explained that while he acknowledges Ms. Pashley-Hamilton's treating relationship with Harrison, the lifting and carrying limits were objectively supported and, thus partial weight was afforded to that portion of the opinion. (Doc. 8-2, at 43). The ALJ further explained that the occasional push, pull, reach, and never climb and kneel limitations opined by Julie Pashley-Hamilton were unsupported to that degree of limitation and inconsistent with the overall record. (Doc. 8-2, at 43). Additionally, the ALJ explained that Harrison's examinations revealed unremarkable findings, including mild swelling, no synovitis, no clubbing, no cyanosis, no peripheral edema, or loss of sensation and normal strength. (Doc. 8-2, at 43). Moreover, the ALJ reasoned that Harrison's treatment as a whole had been conservative with no surgeries or hospital admissions. (*See* Doc. 8-7, at 27, 34, 41, 71; Doc. 8-8, at 90, 92, 94, 96, 100; Doc. 8-9, at 74, 76, 78, 83; Doc. 8-9, at 4, 96, 98, 102, 112; Doc. 8-10, at 2-29). Thus, the ALJ assigned "partial" weight to the opinion of Julie Pashley-Hamilton, PA-C.

16

To reiterate, the Court is not now tasked with revisiting these factual issues but with determining whether the ALJ provided valid reasons for his evaluations and based his conclusions on substantial evidence. Because the ALJ provided adequate articulation and record support for according "partial" weight to the opinion of Julie Pashley-Hamilton, PA-C, Harrison's argument on this score is unavailing.

B. THE ALJ DID NOT ERR IN HIS HYPOTHETICAL TO THE VOCATIONAL EXPERT

Harrison's next claim of error challenges the ALJ's hypothetical question posited to the vocational expert. (Doc. 11, at 18). At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the vocational expert. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford*, 399 F.3d at 554; *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "A hypothetical question posed to the vocational expert must reflect all of the claimant's impairments that are supported by the record; otherwise the question is deficient and the [vocational] expert's answer to it cannot be considered substantial evidence. *Chrupcala*, 829 F.2d at 1276; *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55; *Podedworny*, 745 F.2d at 218. The ALJ, however, is not required to submit to the vocational expert every impairment alleged by a claimant. *Rutherford*, 399 F.3d at 554. "[S]uch references to 'all impairments' encompass only those that are medically established." *Rutherford*, 399 F.3d at 554. Thus, the question posed to the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations. *Rutherford*, 399 F.3d at 554 (quoting *Plummer*, 186 F.3d at 431).

Applying the above standard to the present case, the Court finds that the ALJ did not

err in his hypothetical question to the vocational expert. Harrison argues that the ALJ's hypothetical question improperly omitted credibly established limitations because the ALJ failed to properly credit the opinion of her treating rheumatologist, Dr. Mucciolo and the opinion of her treating physician assistant – Julie Pashley-Hamilton. (Doc. 11, at 19). Harrison contends that Dr. Mucciolo and Julie Pashley-Hamilton, PA-C assessed limitations, which if credited, would have resulted in a finding of disability. (Doc. 11, at 19). However, Harrison asserts that the hypothetical question that the ALJ relied upon, erroneously omitted the limitations assessed by Dr. Mucciolo. (Doc. 11, at 19). Thus, the jobs that the vocational expert testified to in response to the ALJ's hypothetical question, did not constitute substantial evidence (i.e. jobs that Harrison could actually perform). (Doc. 11, at 19).

The Court disagrees. Harrison argues that the ALJ should have adopted the limitations opined by Dr. Mucciolo and Julie Pashley-Hamilton, PA-C. (Doc. 11, at 19). However, the ALJ was not required to include all of the limitations assessed by Dr. Mucciolo and Julie Pashley-Hamilton, PA-C. The ALJ was only required to include all of Harrison's credibly established limitations. *See Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 431. Further, while Harrison contends that the ALJ omitted the limitations opined by Dr. Mucciolo and Julie Pashley-Hamilton, PA-C, she fails to identify the limitations omitted and fails to establish that any additional limitations should have been included. Moreover, as mentioned *supra*, the Court has found that the ALJ properly discounted the opinions of Dr. Mucciolo and Julie Pashley-Hamilton, PA-C. Therefore, Harrison's contentions on this score are without merit.

Therefore, because the Court finds that the ALJ's hypothetical question posited to the vocational expert, adequately set forth all of Harrison's credibly established limitations, the Court finds that the ALJ committed no error as to this issue.

### C. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT HARRISON IS NOT PER SE DISABLED UNDER LISTING 14.04

While Harrison does not specifically argue that she is per se disabled under Listing 14.04A and 14.04D, Harrison's arguments on appeal largely concern Dr. Mucciolo's opinion, which conclude that Harrison's medical impairments meet or medically equal listing 14.04. Thus, the Court is constrained to address this issue in this opinion. It is the responsibility of the ALJ to identify the relevant listed impairments given "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, at 120 (3d Cir. 2000). If a claimant's impairment meets or equals one of the listed impairments, a claimant is per se disabled under the regulations. 20 C.F.R § 404.1520(d); *Burnett*, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equivalent in severity to all the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original); 20 C.F.R § 404.1520(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Zebley*, 493 U.S. at 521.

In this case, viewing the record as a whole, the Court finds that the ALJ's step-three determination is supported by substantial evidence.

### 1. Listing 14.04

In this case, Harrison argues that her medical impairments meet or medically equal listing 14.04A, which in pertinent part, requires the involvement of two or more organs/body systems, with one of the organs/body systems involved to at least a moderate level of severity; and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or

involuntary weight loss). 20 C.F.R. Part 404, Subpt P, App. 1 § 14.04A. In support of this argument, Harrison asserts that her treating rheumatologist, Dr. Mucciolo opined that her medical impairments meet or medically equal listing 14.04A because she had documented scleroderma with the involvement of two or more of the organs/body systems, one to at least a moderate degree of severity; and severe fatigue, malaise, and involuntary weight loss. (Doc. 11, at 8). Harrison contends that the ALJ concluded that her medical conditions did not meet or medically equal listing 14.04A without even mentioning the opinions from Dr. Mucciolo, or indicating why they were not credited. (Doc. 11, at 8). Specifically, Harrison argues:

> [The] ALJ's finding that Plaintiff did not have at least two of the constitutional symptoms or signs because they were "mild" is based on a clear error of law, as § 14.04 requires only that these symptoms or signs be present, not that they be of any particular degree of severity. 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04A(2) and D. Thus, the ALJ's concession that these symptoms and signs were present (albeit "mild" in his view) demonstrates that this portion of the listing requirements was met. Second, the ALJ cited to no evidence whatsoever that Harrison does not have involvement of two or more of the organ/body systems, with one to at least at a moderate degree of severity, as found by the treating specialist. The ALJ improperly substituted his lay judgement [for] the medical findings for the treating rheumatologist's expert opinion; this was particularly egregious given that there is no medical opinion reaching a finding contrary to Dr. Mucciolo and the ALJ did not cite to any evidence that Harrison does not satisfy this requirement of § 14.04A. [The] ALJ's own findings that Harrison has severe impairments associated with scleroderma, including Raynaud's phenomenon, chronic pancreatitis, Barrett's esophagus, lymphocytic colitis, and interstitial lung disease (R. 36) is conclusive evidence that Harrison has involvement of even more than the two organs/body systems required by the listing to a moderate degree.

(Doc. 11, at 9-10).

Harrison further contends:

> [The] ALJ also erred by concluding that Harrison never exhibited at least two of the following signs or symptoms: severe fatigue, malaise, and involuntary weight loss, as required by §§ 14.04A and 14.04D. The medical records confirm evidence of both fatigue (Ex. 1F, pp. 10, 65, and 84, and Ex. 3F, p. 39) and malaise (Ex. 1F, pp. 4, 6, 8, 25, 33, 45, 59, 65, 70, and 84; Ex. 3F, pp. 7, 14, and 39; and, Ex. 6F, p. 4). These findings satisfy the requirements of the listings, but the ALJ simply failed to recognize this evidence.

(Doc. 11, at 10).

The Court is not persuaded by Harrison's argument as to this issue. In this case, the ALJ considered Harrison's medical impairments under listing 14.04. (Doc. 8-2, at 38). The ALJ, however, found Harrison did not have the involvement of two or more organs/body systems, with one of the organs/body systems involved to at least a moderate level of severity; and at least two of the constitutional symptoms of signs (severe fatigue, fever, malaise, or involuntary weight loss). The ALJ explained that Harrison's fatigue, malaise, and weight loss have all been mild, as evidenced by her denials of the symptoms in the medical record. (*See* Doc. 8-2, at 38; *see also* Doc. 8-7, at 11, 26, 31, 34, 40, 47; Doc. 8-9, at 8, 20, 24, 40; Doc. 8-9, at 112; Doc. 8-10, at 9). Harrison argues that the ALJ failed to cite to any evidence to support his determination that she does not have the involvement of two or more organs/body systems, with one organ or body system involving at least a moderate degree of severity, as required under listing 14.04A. (Doc. 11, at 9-10). Harrison asserts that the ALJ's own findings that she has severe impairments associated with scleroderma (including Raynaud's phenomenon, chronic pancreatitis, Barrett's esophagus, lymphocytic colitis, and interstitial lung disease) is evidence enough that she meets this requirement. (Doc. 11, at 10). However, the Court finds that Harrison fails to provide any evidentiary support to support her contention. Harrison references Dr. Mucciolo's July 2018 opinion, which indicates that she has an involvement of two or more organs/body systems, with one of the organs/body systems involving at least a moderate level of severity pursuant to the listing criteria. (See Doc. 8-10, at 31). However, Dr. Mucciolo also fails to specify which two organs/body systems Harrison possesses at a moderate level of severity to meet the requisite requirements of listing 14.04A. Thus, Harrison's contentions on this score are without merit.

Further, Harrison contends that the ALJ's finding that she did not have at least two of the constitutional symptoms or signs required under listing 14.04A because they were "mild" is based on a clear error of law. (Doc. 11, at 9). Harrison argues that listing 14.04A requires only that these symptoms or signs be present, not that they be of any particular degree of severity. 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04A(2) and D. The Court finds, however, that Harrison's assertions are unavailing. At the outset, Harrison is incorrect in her assertion that the listing criteria does not require a particular degree of severity. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04A(2). Listing 14.04A specifically states that a claimant must have "[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss." 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04A(2). Additionally, while Harrison argues that the medical record demonstrates evidence of both fatigue and malaise, listing 14.04A requires a showing that a claimant's medical condition(s) involve two or more organs/body systems, of which one is involved to at least a moderate level of severity. 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04A(1). As mentioned *supra*, the Court has found that Harrison has failed to carry her burden of showing that her impairments involve two or more organs/body systems, of which one is involved to at least a moderate level of severity. Thus, the Court concludes that in this case, Harrison has failed to demonstrate that a remand would lead to a different result. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Hence, finding that Harrison has failed to carry her burden of satisfying all the requirements of listing 14.04A, the Court finds no basis for disturbing the ALJ's decision as to this matter.

## 2.  Listing 14.04D

Similarly, the Court finds that Harrison's impairments do not meet or medically equal listing 14.04D. Listing 14.04D requires repeated manifestations of systemic sclerosis (scleroderma), with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1) limitation of activities of daily living; (2) limitation in maintaining social functioning; and (3) limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Part 404, Subpt. P, App. 1 § 14.04D. Harrison argues that the ALJ improperly found that her medical impairments did not meet or medically equal listing 14.04D. Similar to her argument concerning listing 14.04A, Harrison contends that the ALJ erred in finding that she did not have at least two constitutional symptoms or signs of severe fatigue, fever, malaise, or involuntary weight loss. (Doc. 11, at 9). Harrison further contends that the ALJ erroneously concluded that she did not have marked limitations in activities of daily living, social functioning or concentration, persistence or pace, as evidenced in the medical record. (Doc. 11, at 9). Harrison contends that Dr. Mucciolo opined that she had marked limitations in these areas and that his opinion is supported by substantial evidence. (Doc. 11, at 10-11). Harrison argues:

> [The] ALJ's finding that Harrison does not meet the second prong of § 14.04D because [Harrison] does not have any significant mental status abnormalities is flawed. Dr. Mucciolo explained that [Harrison's] marked limitations in these areas are due to her being "physically slow," not because of mental impairments (R. 624). The ALJ's exclusive focus on the lack of mental status abnormalities in connection with this part of the listing is contrary to the introduction to the Listing itself, which states that these limitations "may result from the impact of the disease process itself on your mental functioning, physical functioning, or both your mental and physical functioning. This could result from persistent or intermittent symptoms, such as depression, severe fatigue, or pain, resulting in a limitation of your ability to do a task, to concentrate, to preserve at a task, or to perform the task at an acceptable rate of speed." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.00(I)(4). The ALJ clearly failed to apply this legal standard when he required that the marked limitations be the result of mental impairments, contrary to the regulation.

23

(Doc. 11, at 11).

Thus, Harrison asserts that the ALJ's decision should be reversed and benefits awarded.

Contrary to Harrison's assertions, substantial evidence supports the ALJ's step three evaluation. At the outset, Harrison argues that the ALJ erred in finding that she does not have at least two constitutional symptoms or signs of severe fatigue, fever, malaise, or involuntary weight loss. (Doc. 11, at 9). However, as mentioned *supra*, the ALJ carefully reviewed the medical record and found that Harrison's fatigue, malaise, and weight loss have all been mild. (*See* Doc. 8-7, at 11, 26, 31, 34, 40, 47; Doc. 8-9, at 8, 20, 24, 40; Doc. 8-9, at 112; Doc. 8-10, at 9). The Court finds that the ALJ provided valid reasons for his evaluations and based his conclusions on substantial evidence. Thus, the Court finds no basis for disturbing the ALJ's decision as to this issue.

Additionally, Harrison argues that the ALJ erroneously concluded that she did not have marked limitations in activities of daily living, social functioning or concentration, persistence or pace, as evidenced in the medical record. (Doc. 11, at 9). Harrison contends that the ALJ should have afforded greater weight to Dr. Mucciolo's opinion, indicating that Harrison had a marked limitation in her activities of daily living and maintaining social functioning, as required under the listing criteria. (*See* Doc. 8-10, at 31-32). The Court, however, has already determined that the ALJ properly discounted the opinion of Dr. Mucciolo. Therefore, the Court is not persuaded by Harrison's argument as to this issue.

## V.   CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Harrison disability benefits is **AFFIRMED** and the final judgement shall be entered in favor of the Commissioner

and against Harrison. The Clerk of Court is directed to **CLOSE** this case.

**Dated: February 25, 2021**                           *s/Karoline Mehalchick*

                                          **KAROLINE MEHALCHICK**
                                          **United States Magistrate Judge**